UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION<br><br>Plaintiff,<br><br>v.<br><br>URS KAMBER,<br>STEPHAN HUSI, and<br>RICHARD JON MAY<br>   14307 Bainbridge Court<br>   Fort Wayne, IN 46814,<br><br>Defendants. | Case No. 1:07-cv-01867 (JDB)<br><br>Judge John D. Bates |

## DEFENDANT RICHARD MAY'S ANSWER TO PLAINTIFF'S COMPLAINT

Defendant Richard May, by counsel, answers Plaintiff Securities and Exchange Commission's ("Commission") Complaint as follows:

May denies each and every allegation of the Complaint not expressly admitted below.

1. May denies the allegations in this paragraph.

2. May admits that in the third quarter of 2002, Centerpulse Ltd. ("Centerpulse" or the "Company") was finalizing debt financing needed to fund an approximately $1.1 billion settlement of numerous products liability lawsuits filed against the Company in the United States. May admits the second sentence of this paragraph. May admits that Centerpulse provided the banks with certain financial information, but lacks sufficient information or knowledge to form a belief as to the specific financial information provided by Centerpulse to

the banks and, therefore, May denies that Centerpulse gave the banks a set of budgets containing forecasted financial results. May denies the remaining allegations in this paragraph.

3.  May denies the allegations in this paragraph.

4.  May lacks sufficient information or knowledge to form a belief as to the truth of the allegations in the last sentence of this paragraph and, therefore, denies those allegations. May denies the remaining allegations in this paragraph.

5.  May denies the allegations in this paragraph.

6.  May denies the allegations in this paragraph.

7.  May denies the allegations in this paragraph.

8.  May admits that the Commission, in bringing this action against May, Urs Kamber, and Stephan Husi, is requesting certain relief as provided in this paragraph. May denies the remaining allegations in this paragraph.

9.  The first sentence of this paragraph states a conclusion of law as to which no response is required. Because May denies various acts, transactions, practices and courses of business that are alleged in the Commission's Complaint, May denies the remaining allegations in this paragraph.

10. May denies that Centerpulse furnished and filed materially false and misleading reports on Forms 6-K and 20-F with the Commission. The remaining allegations of this paragraph state a conclusion of law as to which no response is required.

11. May admits the allegations in this paragraph.

12. May admits that Kamber was the Chief Financial Officer of Centerpulse from September 2001 through October 2003. May admits that Kamber certified the accuracy of the Company's financial results contained in its third quarter 2002 report on Form 6-K, in its fourth

quarter 2002 financial results press release on Form 6-K, and in its 2002 annual report on Form 20-F. May lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in this paragraph and, therefore, denies those allegations.

13.  May admits that Husi served as Corporate Controller of Centerpulse in 2002 and 2003, but lacks sufficient information or knowledge to form a belief as to the precise time period during which Husi served as Corporate Controller and, therefore, denies that Husi began serving as Corporate Controller in early 2002 and ceased serving as Corporate Controller in October 2003. May lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in this paragraph and, therefore, denies those allegations.

14.  May admits that he is 43 years of age, is a U.S. citizen, and lives in Fort Wayne, Indiana. May admits that he was the Group Vice President of Finance and Tax Counsel of Centerpulse USA, Inc. from approximately April 1998 through January 2004. May admits that he served as Treasurer of Centerpulse USA Holding Company for a time period that included 2001 through October 2003. May admits that he is a Certified Public Accountant, and was so while he worked at Centerpulse. May admits that he is an attorney, licensed and admitted to practice in Texas, and was so for a portion of the time that he worked at Centerpulse. May admits that he is currently Vice President of Tax and Treasury and Tax Counsel for Zimmer, Inc., a subsidiary of Zimmer Holdings, Inc., the company that acquired Centerpulse in October 2003. May denies the remaining allegations in this paragraph.

15.  May admits that Centerpulse was previously named Sulzer Medica AG. May admits the remaining allegations in this paragraph, except that May lacks sufficient information or knowledge to form a belief as to when the Company's American Depository Shares ceased to be registered in the United States pursuant to Exchange Act Section 12(b) [15 U.S.C. § 78l] and

ceased to be traded on the New York Stock Exchange and, therefore, denies that the Company's American Depository Shares were de-registered and de-listed in October 2003.

16.  May admits the allegations in this paragraph.

17.  May admits the first, second, and third sentences of this paragraph. May denies the fourth sentence of this paragraph, except that May admits that certain federal lawsuits filed in the United States were consolidated. May admits that as a result of the recall litigation, there was negative media coverage. May admits that there was turnover in Centerpulse's senior management, including its Chief Executive Officer and Chief Financial Officer, during this time period. May lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in this paragraph and, therefore, denies those allegations.

18.  May admits that in 2001 Centerpulse reached a tentative settlement agreement with certain parties to resolve the recall litigation and recorded a reserve of $783 million (the "Recall Reserve") as an initial estimate of its exposure. May admits that this tentative settlement agreement was later modified. May denies the second sentence of this paragraph, except that May admits that the Recall Reserve was increased to $873 million at the end of 2001 in order to reflect the modified settlement agreement that was approved in 2002. May denies the remaining allegations in this paragraph.

19.  May admits the allegations in this paragraph.

20.  May admits the first sentence of this paragraph. May admits that Centerpulse provided the banks with certain financial information, but lacks sufficient information or knowledge to form a belief as to the specific financial information provided by Centerpulse to the banks and, therefore, denies that Centerpulse gave the banks a set of budgets containing forecasted financial results for each quarter of 2002 as well as several years going forward. May

4

lacks sufficient information or knowledge to form a belief as to the truth of the allegations in the third sentence of this paragraph and, therefore, denies those allegations. May denies the remaining allegations in this paragraph.

21.     May denies the allegations in this paragraph.

22.     May denies the allegations in the first and third sentences of this paragraph. May admits that in 2001, Centerpulse agreed to pay Richard Scruggs a $5 million retainer and a $20 million fee if Scruggs could negotiate a settlement to the recall litigation that would not require Centerpulse to declare bankruptcy. May admits that Scruggs disputed the fee arrangement, but May lacks sufficient information or knowledge to form a belief as to the truth of whether Scruggs disputed the fee arrangement in April and May 2002 and, therefore, May denies that Scruggs disputed the fee arrangement in April and May 2002. May lacks sufficient information or knowledge to form a belief as the truth of the allegations in the last sentence of this paragraph and, therefore, denies those allegations.

23.     May lacks sufficient information or knowledge to form a belief as to the truth of the allegations in this paragraph regarding the International Financial Reporting Standards ("IFRS") and, therefore, denies those allegations. May admits the second sentence of this paragraph. May denies the remaining allegations in this paragraph.

24.     May lacks sufficient information or knowledge to form a belief as to the truth of the allegations in the first, second, and third sentences of this paragraph and, therefore, denies those allegations. May denies the remaining allegations in this paragraph.

25.     May denies the allegations in this paragraph.

26.     May lacks sufficient information or knowledge to form a belief as to the truth of the allegations in this paragraph and, therefore, denies those allegations.

27. May admits that on September 5, 2002 he received an e-mail from the Company's Treasurer, and refers to that e-mail for the precise text. May admits that on September 5, 2002, he instructed a subordinate, by e-mail, to prepare the paperwork for two wire requests – one for a potential payment to Scruggs on October 1, 2002, and the other for a potential payment to Scruggs on November 4, 2002. May admits that he sent an e-mail to an attorney associated with the Scruggs Law Firm and refers to that e-mail for the precise text. May denies the remaining allegations in this paragraph.

28. May admits that on September 30, 2002, he sent an e-mail to Kamber and the Treasurer of Centerpulse, and refers to that e-mail for the precise text. May admits that Centerpulse made a $15 million wire transfer to Scruggs on October 1, 2002, and that the Company made another $10 million wire transfer to Scruggs on November 4, 2002. May lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in this paragraph and, therefore, denies those allegations.

29. May denies the allegations in this paragraph.

30. May admits that on September 18, 2002, he sent an e-mail to Kamber, and refers to that e-mail for the precise text. May denies the remaining allegations in this paragraph.

31. May admits that on September 19, 2002, he exchanged e-mails with Kamber, and refers to that e-mail exchange for the precise text. May denies the remaining allegations in this paragraph.

32. May admits that he sent an e-mail to Kamber and Husi on October 9, 2002 that appears to be the e-mail referenced in the Complaint, and refers to that e-mail for the precise text. May admits that on October 9, 2002 Kamber sent an e-mail to May that appears to be the e-

mail referenced in the Complaint, and refers to that e-mail for the precise text. May denies the remaining allegations in this paragraph.

33. May admits that he sent an e-mail to Kamber that responded to Kamber's email of October 9, 2002, and refers to that e-mail for the precise text. May denies the remaining allegations in this paragraph.

34. May admits that Centerpulse, with Kamber and Husi's knowledge and consent, recorded $25 million in payments to Scruggs as an expense in Centerpulse's 2002 fourth quarter books. May denies the remaining allegations in this paragraph.

35. To the extent this paragraph asserts the requirements of Statement of Financial Accounting Standards No. 5 ("FAS 5"), May refers to the text of FAS 5. May denies the remaining allegations in this paragraph.

36. May denies the allegations in this paragraph.

37. May admits that in December 2003, Zimmer Holdings, Inc. restated financial statements previously filed by Centerpulse and moved the additional Scruggs payments to the third quarter of 2002. May denies the remaining allegations in this paragraph.

38. The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

39. The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

40. The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

41. The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

42. The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

43. The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

44. The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

45. The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

46. The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

47.     The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

48.     The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph asserts the requirements of AICPA Statement of Position 98-1 ("SOP 98-1") and International Accounting Standard ("IAS") No. 36, May refers to the text of those documents. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

49.     The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

50.     The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

51.     May admits the first sentence of this paragraph. May denies the remaining allegations in this paragraph, except that May admits that the SpineTech Division's ("SpineTech") reserve covering sales, use, and property tax exposure was increased by SpineTech during the year-end 2001 process, beginning at $200,000 and ending at approximately $6 million.

52.     May admits that in 2002 SpineTech retained Deloitte & Touche to review the Division's sales, use and property tax exposure. May lacks sufficient information or knowledge to form a belief as to when Deloitte & Touche was retained by SpineTech and therefore denies

9

this allegation. May lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in this paragraph and, therefore, denies those allegations.

53. May lacks sufficient information or knowledge to form a belief as to the truth of allegations set forth in the first, second, third, and fourth sentences of this paragraph and, therefore, denies those allegations. May admits that on September 16, 2002 he sent an e-mail to the SpineTech VP, and refers to that e-mail for the precise text. May denies the remaining allegations in this paragraph.

54. May lacks sufficient information or knowledge to form a belief as to the truth of the allegations in this paragraph and, therefore, denies those allegations.

55. May denies the allegations in this paragraph.

56. The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

57. The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

58. The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

59. The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

60. The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

61. The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

62. The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

63. May admits the first sentence of this paragraph. May denies the remaining allegations in this paragraph.

64. May denies the allegations in this paragraph.

65. May admits that on November 22, 2002, Husi sent an e-mail to Kamber and others. May refers to that e-mail for the precise text. May denies the remaining allegations in this paragraph.

66. May admits that Kamber, Husi, May and others participated in a conference call on December 12, 2002. May admits that meeting minutes were drafted regarding this conference call, and May refers to those meeting minutes for the precise text. May denies the remaining allegations in this paragraph.

67. May denies the allegations in this paragraph.

68. May admits that he raised issues regarding potential additional liabilities concerning the recall litigation settlement. May admits that on January 23, 2003 he sent e-mails

to Kamber, Husi, and others, and refers to those e-mails for their precise text. May denies the remaining allegations in this paragraph.

69.  May admits that on January 24, 2003, Kamber sent May an e-mail. May refers to that e-mail for the precise text. May denies the remaining allegations in this paragraph.

70.  May admits that on January 24, 2003, Husi sent an e-mail to May and Kamber. May refers to that e-mail for the precise text. May admits that on January 24, 2003, May sent an e-mail to Husi and Kamber. May refers to that e-mail for the precise text. May denies the remaining allegations in this paragraph.

71.  May denies the allegations in this paragraph.

72.  May denies the allegations in this paragraph.

73.  May admits that on February 6, 2003, Centerpulse announced its annual sales results for 2002 in a press release. May refers to that document for the precise text. May denies the remaining allegations in this paragraph.

74.  May admits that on January 27, 2003 he sent an e-mail to Kamber and Husi, and refers that e-mail for the precise text. May admits that on January 28, 2003 he received an e-mail from Husi and an e-mail from Kamber. May refers to those e-mails for their precise text. May denies the remaining allegations in this paragraph.

75.  May admits that he signed a representation letter in connection with Centerpulse's fiscal year 2002 audit, and refers to that document for the precise text. May denies the remaining allegations in this paragraph.

76.  May admits that on February 21, 2003 he sent an e-mail to Kamber and others, and refers to that e-mail for the precise text. May denies the remaining allegations in this paragraph.

77. May admits that on February 22, 2003, he received an e-mail from Kamber that appears to be the e-mail referenced in the Complaint, and refers to that e-mail for the precise text. May denies the remaining allegations in this paragraph.

78. May admits that on February 24, 2003, he sent an e-mail to Kamber that appears to be the e-mail referenced in the Complaint, and refers to that e-mail for the precise text. May denies the remaining allegations in this paragraph.

79. May denies the allegations in this paragraph.

80. To the extent this paragraph asserts the requirements of FAS 5 and IAS No. 37, May refers to the text of FAS 5 and IAS No. 37. May denies the remaining allegations in this paragraph.

81. To the extent this paragraph asserts the requirements of FAS 5 and IAS No. 37, May refers to the text of FAS 5 and IAS No. 37. May denies the remaining allegations in this paragraph.

82. May denies the allegations in this paragraph.

83. May admits that in July 2003, Centerpulse announced that it would increase the Recall Reserve by $45 million. May refers to this announcement for the precise text. May admits that in the third quarter of 2003 Centerpulse increased the Recall Reserve again, this time by approximately $47 million. May denies the remaining allegations in this paragraph.

84. The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

85. The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

86. The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

87. The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph asserts the requirements of U.S. GAAP and IFRS, May refers to the text of the relevant provisions of U.S. GAAP and IFRS. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

88. The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

89. May admits that on March 20, 2003, Centerpulse issued its year-end 2002 financial results in a press release, later filed with the Commission on March 28, 2003 in a Form 6-K. May refers to that document for the precise text. May lacks sufficient information or knowledge to form a belief as to the truth of the allegation that Centerpulse's reported EBITDA was in line with analysts' forecasts and, therefore, denies this allegation. May denies the remaining allegations in this paragraph.

90. May admits that Centerpulse filed its 2002 annual report on Form 20-F with the Commission on April 25, 2003. May refers to that document for the precise text. May denies the remaining allegations in this paragraph.

91. May denies the allegations in this paragraph.

92. May lacks sufficient information or knowledge to form a belief as to the truth of the allegations in this paragraph and, therefore, denies those allegations.

93. May lacks sufficient information or knowledge to form a belief as to the truth of the allegations in this paragraph and, therefore, denies those allegations.

94. May admits that as part of his bonus for 2001 he received $95,310, pretax. May admits that for 2002 he received 40,000 options for American Depositary Receipts, which he exercised in 2003 for a profit of approximately $500,000, net of commissions and taxes. May denies the remaining allegations in this paragraph.

95. May incorporates by reference his answers to paragraphs 1 through 94 set forth herein.

96. To the extent the allegations in this paragraph contain legal conclusions, no response is required. May denies the remaining allegations in this paragraph.

97. To the extent the allegations in this paragraph contain legal conclusions, no response is required. May denies the remaining allegations in this paragraph.

98. To the extent the allegations in this paragraph contain legal conclusions, no response is required. May denies the remaining allegations in this paragraph, including its subparts (a) through (h).

99. May incorporates by reference his answers to paragraphs 1 through 94 set forth herein.

100. To the extent the allegations in this paragraph contain legal conclusions, no response is required. May denies the remaining allegations in this paragraph.

101. May incorporates by reference his answers to paragraphs 1 through 94 set forth herein.

102.    To the extent the allegations in this paragraph contain legal conclusions, no response is required. May denies the remaining allegations in this paragraph.

103.    To the extent the allegations in this paragraph contain legal conclusions, no response is required. May denies the remaining allegations in this paragraph.

104.    May incorporates by reference his answers to paragraphs 1 through 94 set forth herein.

105.    The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent the allegations in this paragraph contain legal conclusions, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

106.    The allegations in this paragraph are not directed toward May, and, accordingly, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

107.    May incorporates by reference his answers to paragraphs 1 through 94 set forth herein.

108.    To the extent the allegations in this paragraph contain legal conclusions, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

109.    May incorporates by reference his answers to paragraphs 1 through 94 set forth herein.

110.    To the extent the allegations in this paragraph contain legal conclusions, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

111. To the extent the allegations in this paragraph contain legal conclusions, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

112. To the extent the allegations in this paragraph contain legal conclusions, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

113. May incorporates by reference his answers to paragraphs 1 through 94 set forth herein.

114. To the extent the allegations in this paragraph contain legal conclusions, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

115. To the extent the allegations in this paragraph contain legal conclusions, no response is required. To the extent this paragraph makes factual allegations requiring a response, May denies those allegations.

May reserves the right to amend this Answer or to assert other defenses as this action proceeds.

**PRAYER FOR RELIEF**

May denies the allegations contained in the prayer for relief, including its subparts (I) through (VIII), and denies the Commission is entitled to any of the requested relief.

**AFFIRMATIVE DEFENSES**

**I.**

The Complaint fails to state a claim for relief against May and should be dismissed.

**II.**

The Complaint is barred in whole or in part by the applicable statutes of limitations.

**III.**

The Complaint is barred in whole or in part by laches.

**RELIEF REQUESTED**

May asks the Court to enter judgment in his favor and against the Commission; dismiss the Complaint with prejudice; and award him the costs of suit, including attorneys' fees, and such other relief as the Court may deem proper.

**DEMAND FOR JURY TRIAL**

May hereby demands a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: November 6, 2007

Respectfully Submitted,

_____
Bruce M. Bettigole (D.C. Bar No. 358103)
MAYER BROWN LLP
1909 K Street, NW
Washington, D.C. 20006-1101
(202) 263-3267
Fax: (202) 263-5267

*Attorney for Defendant Richard May*

CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2007, I caused a true and correct copy of Defendant Richard May's Answer to Plaintiff's Complaint to be served on all parties by filing it through the court's electronic filing system.

/s/
Bruce M. Bettigole